UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

BLAINE J. CAMPBELL (deceased), )
  )
      Plaintiff, )
  ) No. 1:08-CV-89
v. )
  ) *Collier / Lee*
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
  )
      Defendant. )

## REPORT AND RECOMMENDATION

This action was instituted by the Plaintiff pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the Plaintiff a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's motion for judgment on the pleadings [Doc. 13] and Defendant's motion for summary judgment [Doc. 17].

For the reasons stated herein, I **RECOMMEND** that: (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 17] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED**.

## Administrative Proceedings

On February 16, 2006, Plaintiff filed applications for SSI and DIB (Tr. 84-87, 88-89). Both applications alleged disability beginning on October 29, 2004 (*id.*). After his applications were

denied initially and on reconsideration (Tr. 54-57, 58-63, 64-65, 68-70), Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 71). Plaintiff died on April 18, 2007, from causes unrelated to his claims for disability (Tr. 91). Plaintiff's widow, Robyn Campbell ("Plaintiff's widow" or "Mrs. Campbell"), filed a notice of substitution of party (Tr. 78). Following the administrative hearing on February 22, 2008 (Tr. 37-53), the ALJ issued a decision on March 26, 2008, denying Plaintiff's applications for DIB and SSI (Tr. 5-15). The ALJ's decision became the final decision of the Commissioner on August 29, 2008, when the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).

**Standard of Review**

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there

2

is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

## How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:
>
> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.

3

> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

### **ALJ's Findings**

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant engaged in substantial gainful activity after October 29,

2004, the alleged onset date . . . .

3. The claimant had the following severe impairments: irritable bowel syndrome, esophageal dysmotility, and chronic musculoskeletal pain . . . .

4. The claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 . . . .

5. After careful consideration of the entire record, I find that the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

6. The claimant was unable to perform any past relevant work . . . .

7. The claimant was born . . . 1971 and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date . . . .

8. The claimant has at least a high school education and is able to communicate in English . . . .

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills . . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 29, 2004, through the date of this decision . . . .

(Tr. 10-12, 14-15).

## **Issues**

The issues presented by Plaintiff are:

1. Whether this matter should be remanded to the

5

>                    Commissioner pursuant to sentence four of 42 U.S.C.
>                    § 405(a) for further consideration because the ALJ
>                    failed to consider whether the Plaintiff was entitled to
>                    a closed period of disability from October 29, 2004,
>                    through December 2005?
>
>     2.             Whether the ALJ erred in concluding the testimony of
>                    Plaintiff's widow was not fully credible?

[Doc. 14 at 5-9 ].

## Review of Evidence

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff completed high school and was 33 years old on October 29, 2004, his alleged onset date (Tr. 93). Based upon the testimony of the vocational expert ("VE") at the administrative hearing, Plaintiff had past relevant work experience as a food-service driver, call-center operator, truck driver, and a cook (Tr. 44-45).

*Medical Evidence*

Only the most pertinent information will be briefly mentioned herein as it is not necessary to summarize all of the medical evidence, most of which is not in dispute. Whether or not the medical evidence is summarized herein, however, all of the relevant medical evidence has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

An MRI of Plaintiff's lumbar spine taken on March 28, 2002, was interpreted by Avinash Sud, M.D. as showing: (1) mild posterior annular bulge throughout the lumbar spine, without evidence of significant stenosis of the spinal canal or nerve root foramen; and (2) old anterior wedge compression deformity of L1 with approximately 20% loss of height anteriorly (Tr. 167).

Plaintiff was examined by Susan Benson, M.D., on July 9, 2002, based upon his complaints

6

of cervical/thoracic and low back pain (Tr. 158-66). Based upon her examination, Dr. Benson's primary impressions were: (1) chronic low back pain with multi-level degenerative disc disease and history of 20% anterior compression fracture at L1 in 1992 and (2) chronic mechanical cervical pain (Tr. 165). Dr. Benson's secondary impressions were: (1) pes planus, (2) cigarette smoking addiction, (3) Gastroesophageal reflux disease ("GERD"), (4) anxiety, (5) history of right inguinal hernia repair, (6) history of abscessed tooth, and (7) myofascial pain (*id.*).

Plaintiff was seen by Maurice Barnes, M.D. on numerous occasions between February 12, 2003 and May 9, 2005 (Tr. 240-60). At his most recent examination of Plaintiff on May 9, 2005, Dr. Barnes' impression was: (1) irritable bowel syndrome, controlled; (2) esophageal dysmotility; (3) anxiety and depression; (4) obsessive-compulsive disorder, controlled; and (5) chronic musculoskeletal pain with "clinic management" (Tr. 240).

Plaintiff was also seen by William H. Leone, M.D., on several occasions between January 10, 2005 and July 25, 2005 (Tr. 262-83). On January 10, 2005, Dr. Leone's impression included: (1) lumbar radiculopathy, left lower extremity; (2) lumbar degenerative disc disease; (3) lumbar spondylosis; (4) positive 3 level discogram; and (5) status post closed head injury, secondary to motor vehicle accident. (Tr. 263). In addition, Dr. Leone's treatment notes, dated April 4, 2005, indicate Plaintiff's pain medication allowed him to work part time (Tr. 274). Under the "x" which indicates Plaintiff was working part time is written "Ebay" (*id.*). On a March 7, 2005 treatment note from Dr. Leone, Plaintiff also placed an "x' to indicate he was working part time and wrote "coin shows & Ebay." (Tr. 271). On a treatment note from Dr. Leone, dated June 2, 2005, Plaintiff similarly placed an "x" indicating his pain medication permitted him to work part time and wrote "Ebay Job." (Tr. 281). Further, on a June 30, 2005 treatment note, Plaintiff placed an "x" indicating

he was working part time and wrote, in pertinent part, "Ebay & pay debt" (Tr. 282).

Dr. Emelito Pinga, M.D., performed a consulting physical examination of Plaintiff on May 9, 2006, for the state agency (Tr. 287-92). Plaintiff told Dr. Pinga he had been working at Domino's Pizza in Chattanooga, Tennessee, for about two months (Tr. 288). Dr. Pinga's impression was: (1) degenerative arthritis in the lumbar spine, degenerative disk disease at the level of L4-L5 vertebrae and at the level of L5-S1 vertebrae, with old compression fracture at the level of L1 vertebra, status post epidural steroid injections, status post physical therapy, on therapy with carisoprodol and hydrocodone tablet; (2) irritable bowel syndrome, on therapy with Zelnorm tablet; (3) GERD, on therapy with Prilosec tablet, and (4) morbid obesity (Tr. 292). Dr. Pinga opined Plaintiff could sit for six hours in an eight-hour workday and stand and/or walk for four hours in an eight-hour workday (*id.*). Dr. Pinga also opined Plaintiff had limitations of frequent lifting of five to ten pounds or lifting of 15 pounds (*id.*).

David Thompson, M.A., performed a psychological examination of the Plaintiff for the state agency on May 10, 2006 (Tr. 293-99). Based upon a history, mental status examination, and psychological testing, Mr. Thompson diagnosed: depressive disorder, not otherwise specified (Tr. 298). Mr. Thompson stated the psychological testing indicates Plaintiff's intellectual functioning and memory were in the average range, but some problems with attention and concentration were indicated (Tr. 298). Mr. Thompson opined Plaintiff's ability to: (1) understand and remember was moderately impaired; (2) sustain concentration and persistence was moderately impaired; (3) interact with others was slightly impaired; and (4) adapt to changes and requirements was slightly impaired (*id.*).

Frank D. Kupstas, Ph. D., completed an assessment of Plaintiff's mental RFC on June 6,

8

2006 (Tr. 314-17). Dr. Kupstas indicated Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods (Tr. 314). Dr. Kupstas rated Plaintiff as being not significantly limited in all other areas of his mental functioning (Tr. 314-15).

Marvin H. Cohn, M.D., completed an assessment of Plaintiff's physical RFC for the state agency on June 11, 2006 (Tr. 318-25). Dr. Cohn indicated Plaintiff could occasionally lift and/or carry a maximum of 20 pounds, frequently lift and/or carry a maximum of ten pounds; stand and/or walk, with normal breaks, for a total of six hours in an eight-hour workday; and sit, with normal breaks, for about six hours in an eight-hour workday (Tr. 319). Dr. Cohn also indicated Plaintiff had postural limitations which limited him to frequently climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 320).

*Hearing Testimony*

It is not necessary to summarize all of the hearing testimony, however, all of the testimony has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

*Plaintiff's Widow*

Plaintiff's widow testified her husband had worked for Domino's Pizza as a delivery driver; and, prior, to then, worked as a customer service representative for Bell South Telecommunications (Tr. 41). Mrs. Campbell testified she and her husband separated and got back together several times during the several months leading up to his death (*id.*).

Plaintiff's widow stated he was working for Bell South when he had an auto accident that forced him to stop working completely (Tr. 44). Plaintiff tried to return to work in October 2004, following his auto accident in March 2004, but his return to work was unsuccessful (Tr. 45).

9

The ALJ asked about the earning reflected in his earnings record for 2006 (Tr. 46). Plaintiff's widow testified the "earnings" were the result of Plaintiff selling items on Ebay to earn money (*id.*).

Plaintiff's widow stated she had lived with him for 11 years and the main reason he could not work:

> was that he could not sit in a stationary position for long periods of time. He had to lie down after awhile. He walked with a cane. His speech and his mannerisms changed dramatically after the car accident. He was not the same person. And his personality all but disappeared . . . ." (Tr. 50).

Plaintiff's widow also stated Plaintiff's back pain "was excruciating for him. He would cry often" (*id.*).

### *Vocational Expert*

Katharine Bradford, the VE at the hearing, detailed Plaintiff's past relevant work (Tr. 44-45).

## **Analysis**

### *Closed Period of Disability*

Plaintiff's widow asserts "[g]iven that the record shows improvement of [Plaintiff's] condition," this matter should be remanded to permit the Commissioner to address whether he was disabled for a closed period [Doc. 14 at 7]. Plaintiff's widow asserts the ALJ found Plaintiff did not engage in substantial gainful activity from October 2004 through November 2005 [*id.* at 8] and that Plaintiff's condition was much worse in 2004 and 2005 than it was in 2006, because he was still suffering facial pain and undergoing reconstructive surgeries a year after his March 2004 automobile accident [*id.*]. Plaintiff's widow asserts the opinion evidence upon which the ALJ relied is based upon examinations which occurred in the spring of 2006 [*id.*].

10

The Sixth Circuit has held that although the Social Security Act does not provide for a closed period of benefits, a closed period of benefits may be awarded. *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) (citing 42 U.S.C. § 416(i)(2)(D) and (E) (2004)). A claimant must meet the twelve-month durational requirement before he can be found disabled. *Lang v. Sec'y of Health and Human Servs.*, No. 88-1561, 1989 WL 40188, *2 (6th Cir. Apr. 12, 1988) (citing 42 U.S.C. § 423(d)(1)(A)). "[A]n individual who satisfied the durational requirement of the Act may be entitled to benefits from the time his disability commences until such time as the disability ceases." *Id.* (citing *Howse v. Heckler*, 782 F.2d 626 (6th Cir. 1986)). "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n. 2 (10th Cir. 1999) (quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987)).

The regulations state:

> The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment(s) that makes you unable to do your past relevant work . . . or any other substantial gainful work that exists in the national economy.

20 C.F.R. §§ 404.1505(a), 416.905(a). The Act, 42 U.S.C. § 423(d)(1)(A), defines disability as the:

> inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Thus, in order to receive a closed period of benefits, a plaintiff must present evidence to establish he "was continuously disabled for a period of twelve months, as is required by 42 U.S.C. §

11

423(d)(1)(A)." *Weeks v. Comm'r of Soc. Sec.*, No. 1:08-CV-148, 2009 WL 648603, *6 (S.D. Ohio Mar. 10, 2009).

In his decision, the ALJ found:

> The claimant did not engage in substantial gainful activity from his alleged onset date through December 2005. He performed some work during this period, but it did not rise to the level of substantial gainful activity.
>
> The claimant has earnings posted from three employers for 2006, and the total reflects the performance of substantial gainful activity in this year. The claimant's widow testified that he did not work, but sold off personal items on Ebay. This may also have been the case, but in addition to the claimant's earnings record, he told medical sources that he was working in 2006.
> . . .
> In terms of the claimant's alleged irritable bowel syndrome, Dr. Barnes did not record the claimant's specific complaints or suggest any vocational restrictions for the period in question. Dr. Barnes noted that the claimant experienced a recurrence of occasional vomiting because of increased stress in October 2004, but he indicated that the claimant's irritable bowel syndrome was controlled at his last documented visit in May 2005. Based on the evidence of record, the claimant's gastroenterological problems were greater in 2003 and 2003, when the claimant still worked . . . the office note from May 2005 suggests no worsening or any functional deficit.
> . . .
> Pain management from Dr. Leone, which spanned January through August 2005, appears to have been very successful, based on the claimant's positive reports in August, and the fact that he did return to work activity in 2006 (or even late 2005). . . .
> . . .
> The claimant had a left wrist fracture and lost at least one tooth in a motor vehicle accident in March 2004. His wrist was repaired surgically, and there is no evidence of further subjective complaint or objective problem with his wrist. The claimant underwent several surgeries for dental implants in early 2005. . . . By the time Mr. Thompson evaluated the claimant in May 2006, the claimant had returned to part-time work . . . .
> . . .
> Because no further evidence was submitted to the record, I infer that the claimant was much improved by the middle of 2005. He returned

12

> to work in either late 2005 or 2006, and the consultative examinations
> in May 2006 reflect significant mental and physical capacity for
> work.

(Tr. 10, 13-14).

Plaintiff's widow cannot prevail on her claim for a remand to permit the ALJ to consider whether Plaintiff was entitled to a closed period of disability because substantial evidence supports the ALJ's finding that Plaintiff "was not under a disability within the meaning of the . . . Act from October 29, 2004 through the date of his death" (Tr. 8). The ALJ noted, based upon the lack of any further conflicting evidence in the record, that, although Plaintiff did not return to work until late 2005 or 2006, Plaintiff "was much improved by the middle of 2005 " (Tr. 14). *See Henriquez v. Astrue*, 482 F. Supp. 2d. 50, 59 (D. Mass. 2007) (claimant cannot prevail on the argument the ALJ failed to consider whether she was entitled to a closed period of disability, where the ALJ fully considered whether she was disabled from any continuous period of not less than 12 months over the entire time-frame at issue.)

As noted, the ALJ found Plaintiff did not engage in substantial gainful activity from his alleged onset date, October 29, 2004, through December 2005 (Tr. 10). The ALJ specifically found Plaintiff did perform some work during this period, but that work failed to rise to the level of substantial gainful activity (*id.*).

With regard to Plaintiff's RFC for physical complaints, the ALJ gave determinative weight to the findings of the consultative examiner, Dr. Pinga, who opined Plaintiff was capable of a reduced range of light work (Tr. 13). The ALJ also noted there was no persuasive evidence in the record which contradicts Dr. Pinga's assessment (*id.*). Dr. Pinga's examination and assessment, which dates from May 9, 2006, was made some months after the end of the possible period of a

13

closed period of disability, December 2005. Although Dr. Pinga's assessment is dated several months after the end of the period in which the ALJ found Plaintiff was not engaged in substantial gainful employment, Plaintiff's widow cannot point to the assessment or opinion of any treating physician that preceded Dr. Pinga's assessment and contradicts it or is more restrictive than it is.

Plaintiff saw his treating physician, Dr. Barnes, on May 9, 2005 (Tr. 240). On May 9, 2005, Dr. Barnes indicated Plaintiff's irritable bowel syndrome was controlled, his obsessive compulsive disorder was controlled, and his musculoskeletal pain was under clinical management (*id.*). More importantly, Dr. Barnes did not set forth any opinion as to the limitations on Plaintiff's RFC as the result of his examination of Plaintiff. Plaintiff was also seen by Dr. Leone on May 3, 2005. Dr. Leone indicated Plaintiff was using a cane and, on examination, had a decreased range of motion of the lumbar spine and tenderness to palpation of the lumbar spine, but also had a negative straight-leg raising test (Tr. 279). Dr. Leone indicated Plaintiff should continue with his pain medication and should consider a lumbar radiofrequency on the left side if lumbar facet injections did not give him pain relief, but Dr. Leone did not opine any limitations to Plaintiff's RFC (Tr. 278). On August 24, 2005, Plaintiff was examined by Dr. Timothy Miller, M.D., another physician in Dr. Leone's office. Plaintiff was walking with a cane, but also told Dr. Miller his pain medication allowed him to improve his sleep, be more active, perform housework, work part time, walk for several hours per day, and walk his dog (Tr. 286). Plaintiff also told Dr. Miller due to his activity level and pain medication, he was using his cane for only a few days per month and had been decreasing his pain medication (*id.*). Dr. Miller found a decreased range of motion and positive tenderness to palpation of Plaintiff's lumbar spine as well as positive lumbrosacral muscle spasms, but a negative straight-leg raising test (Tr. 285). Dr. Miller recommended Plaintiff continue with his pain medication and

14

a lumbar radiofrequency on the left side, but also opined no limitations to Plaintiff's RFC (*id.*).

Similarly, Plaintiff's widow complains Mr. Thompson's consultative psychological evaluation in May 2006, was performed subsequent to the closed period of disability. As the result of his consultative evaluation, Mr. Thompson diagnosed Plaintiff with depressive disorder, not otherwise specified, and also assessed Plaintiff's ability to understand, remember and sustain concentration and persistence as being moderately impaired and his ability to interact with others and adapt to changes and requirements as being slightly impaired (Tr. 298). Again, however, Plaintiff's widow can point to no treating physician of record who opined more restrictive limitations to Plaintiff's mental ability to engage in substantial gainful employment during the relevant period.

In October 2004, Dr. Barnes diagnosed Plaintiff with obsessive-compulsive disorder, improved, and stated Plaintiff had significant psychological problems related to his injury (Tr. 241). Plaintiff told Dr. Barnes he was experiencing improvement of his obsessive-compulsive disorder and anxiety and depression on his medications, Valium and Lexapro, and that his neuropsychologist, Dr. Berger, advised him to continue his medications (*id.*). On May 9, 2005, Dr. Barnes saw Plaintiff and reported his obsessive-compulsive disorder was controlled (Tr. 240).

Thus, substantial evidence supports the ALJ's conclusion that Plaintiff was not continuously disabled from any continuous period of not less than 12 months during the period beginning with his alleged onset of disability, October 29, 2004, and ending with his death. Based upon the evidence of record, the ALJ could reasonably conclude during the period from May 2005 through August 2005, Plaintiff's physical and mental condition improved to the point that, although Plaintiff was not engaging in substantial gainful employment, he had, no later than August 2005, the RFC

15

to do so.

*Testimony of Plaintiff's Widow*

Plaintiff also asserts the ALJ erred in according little weight to his widow's testimony. [Doc. 14 at 9]. In his decision, the ALJ stated:

> I give little weight to the testimony of Mrs. Campbell, from whom the claimant was estranged during much of the period in question. For example, Mrs. Campbell testified that the claimant did not work in 2006, but substantial evidence reflects otherwise.

(Tr. 14).

Plaintiff's widow complains the ALJ erred in discounting her testimony because she was estranged from her husband during some of the period in question [Doc. 14 at 9]. As previously noted, Mrs. Campbell testified she and Plaintiff separated several times throughout the months leading up to his death (Tr. 41). The ALJ also asked Mrs. Campbell about Plaintiff's earnings record (Tr. 92), which showed earnings for all four quarters of 2006. Mrs. Campbell testified Plaintiff did not work at all in 2006, and that Plaintiff's reported earnings for 2006 resulted from the sale of memorabilia and other items on Ebay (Tr. 46). During the consultative psychological evaluation, which was performed by David Thompson, M.A. for the state disability agency on May 10, 2006, Plaintiff reported he and his widow had been separated since February (Tr. 294). During the same evaluation, Plaintiff also indicated he was continuing to work approximately 18 to 20 hours per week (Tr. 295). In the memorandum in support of her judgment on the pleadings, Plaintiff's widow conceded "[b]y April of 2006 he had recovered enough to work eighteen to twenty hours a week delivering pizzas" [Doc. 14 at 3].

In determining credibility, the ALJ considers, among other things, whether there are any inconsistencies between the testimony and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4) and

16

416.929(c)(4). "Discounting credibility to a certain degree is appropriate where the ALJ finds contradiction among the medical reports, . . . testimony , and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the ALJ is charged with the responsibility of observing the demeanor and credibility of the witness, his conclusions should be highly regarded. *Id.*; *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

Here, the ALJ not only had the opportunity to observe Mrs. Campbell's testimony, but in determining her testimony was not fully credible, the ALJ cited specific examples of her testimony which were inconsistent with evidence in the administrative record. First, the ALJ correctly noted Mrs. Campbell testified during the hearing she and Plaintiff were separated at times during the several months preceding his death. Second, the ALJ noted Mrs. Campbell testified her husband told her he never worked during 2006; but her testimony is inconsistent with other evidence in the record, particularly Plaintiff's statement to Dr. Pinga during the May 2006 consultative examination that Plaintiff had been working at Domino's Pizza for about two months. In her memorandum in support of her motion, Plaintiff's widow has acknowledged Plaintiff had recovered enough to work as of April 2006. Accordingly, I **CONCLUDE** the ALJ's determination Mrs. Campbell's testimony during the hearing was not fully credible is supported by substantial evidence in the record.

Having reviewed the administrative record and briefs in light of the issues raised by Plaintiff, I **CONCLUDE** the decision of the Commissioner denying benefits to Plaintiff is supported by substantial evidence in the record.

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in

support of their respective motions, for the reasons stated above it is **RECOMMENDED**[1]:

   (1)   Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**;

   (2)   Defendant's motion for summary judgment [Doc. 17] be **GRANTED**;

   (3)   Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **AFFIRMING** the Commissioner's decision which denied benefits to the Plaintiff; and

   (4)   This action be **DISMISSED**.

s/*Susan K. Lee*<br>
SUSAN K. LEE<br>
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).